IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELTA-SONIC CARWASH SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS; LIEUTENANT GENERAL WILLIAM H. GRAHAM, JR., in his official capacity as Commanding General of the Army Corps of Engineers; and COLONEL DANIEL J. HERLIHY, in his capacity as Division Engineer for the Great Lakes and Ohio River Division of the Army Corps of Engineers, and MELINDA LARSEN, in her capacity as Review Officer, Army Corps of Engineers, Northwestern Division, and SUZANNE L. CHUBB, in her official capacity as Regulatory Program Chief, Army Corps of Engineers, Great Lakes and Ohio River Division,<br><br>Defendants. | **COMPLAINT**<br><br>Civil Case No. 5:26-cv-341 (FJS/MJK) |

Plaintiff Delta-Sonic Carwash Systems, Inc. ("Plaintiff"), by and through its attorneys, Whiteman Osterman & Hanna LLP, respectfully submits the following complaint against the United States Army Corps of Engineers ("Corps"), Lieutenant General William H. Graham, Jr. in his official capacity as Commanding General of the Army Corps of Engineers, Colonel Daniel J. Herlihy, in his capacity as Division Engineer for the Great Lakes and Ohio River Division of the Army Corps of Engineers, Melinda Larsen in her official capacity as Review Officer for the Army Corps of Engineers Northwest Division, and Suzanne L. Chubb, in her official capacity as the Regulatory Program Chief, Army Corps of Engineers, Great Lakes and Ohio River Division (collectively, "Defendants"):

## JURISDICTION AND VENUE

1.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

2.  This Court has the authority to provide the relief requested against Defendants pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, 28 U.S.C. §§2201 (Declaratory Judgment Act) and 2412 (Equal Access to Justice Act), 5 U.S.C. § 702 (Administrative Procedure Act), and 42 U.S.C. § 1988 (relief for violation of civil rights).

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, and the property that is the subject of this action is located within, the Northern District of New York.

## PARTIES

4.  Plaintiff Delta-Sonic Carwash Systems, Inc. is a domestic corporation organized pursuant to the laws of the State of New York with a principal place of business at 570 Delaware Avenue, Buffalo, New York 14202.

5.  Plaintiff is the owner of certain real property located at 3805 and 3809 State Route 31 in the Town of Clay, County of Onondaga, State of New York more particularly identified as Town of Clay Tax Map SBL No. 020.-01-02.2 (the "Property"). Plaintiff's property is generally unimproved except for an abandoned one-story residential building along the southern site boundary.

6.  Defendant U.S. Army Corps of Engineers (the "Corps") is a branch of the United States Army charged with issuing approved jurisdictional determination with respect to those waters of the United States which are regulated under section 404 of the Clean Water Act ("CWA").

7. Defendant Lieutenant General William H. Graham Jr. is the Commanding General of the Corps.

8. In his capacity as Commanding General of the Corps, Defendant Graham is charged with enforcing Section 404 of the CWA, including issuing approved jurisdictional determinations with respect to those waters of the United States which are regulated under section 404 of the CWA.

9. Defendant Graham is sued in his official capacity.

10. Defendant Herlihy is the Division Engineer for the Corps' Great Lakes and Ohio River Division.

11. The Corps' Great Lakes and Ohio River Division includes the Corps' Buffalo District, within which the Property resides.

12. In his capacity as Division Engineer for the Great Lakes and Ohio River Division, Defendant Herlihy is charged with enforcing Section 404 of the CWA, including by issuing approved jurisdictional determinations under Section 404 of the CWA, and overseeing the administrative appeal process for such approved jurisdictional determinations.

13. Pursuant to 33 CFR 331.3(a)(1), the Division Engineer, here Defendant Herlihy, has the authority to delegate his authority and responsibility over the administrative appeals process.

14. Pursuant to a May 5, 2025 memorandum entitled "Appointment of Administrative Appeal Review Officer" executed by Defendant Herlihy's predecessor, Major General Mark Quander, the Division Engineer delegated his authority and responsibility with respect "to the NWD Review Officer."

15. Pursuant ot the same memorandum, final decision authority was delegated to the Great Lakes and Ohio River Division's Regulatory Program Manager.

16. However, the same memorandum further provides that the "Division Engineer retains overall responsibility for the administrative appeal process" and that "the Division Engineer retains the final Corps decision-making authority for the approved JD."

17. Defendant Herlihy is sued in his official capacity.

18. Defendant Melinda Larsen is the Review Officer for the Corps Northwest Division ("NWD").

19. Pursuant to the above-described May 5, 2025 memorandum, the Division Engineer for the Great Lakes and Ohio River Division delegated the authority and responsibility for the administrative appeal process to the NWD Review Officer.

20. Defendant Larsen was the NWD Review Officer at all times relevant to this action.

21. Defendant Larsen is sued in her official capacity.

22. Defendant Suzanne L. Chubb is, and at all times relevant hereto was, the Regulatory Program Chief for the Corps' Great Lakes and Ohio River Division.

23. Pursuant to the above-described May 5, 2025 memorandum, the Division Engineer for the Great Lakes and Ohio River Division delegated final decision authority for the administrative appeal process to the Great Lakes and Ohio River Division Regulatory Program Manager.

24. Defendant Chubb is sued in her official capacity.

**LEGAL BACKGROUND**

25.     Congress enacted the CWA in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" (33 U.S.C. § 1251(a)) and "recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the [EPA administrator] in the exercise of his authority under this chapter." (33 U.S.C. §1251(b)).

26.     The CWA prohibits "the discharge of any pollutant" into "navigable waters," 33 U.S.C. §§ 1311(a), 1362(12)(A), and jointly empowers the Environmental Protection Agency ("EPA") and the Corps with its enforcement. See 33 U.S.C. §§ 1319(a), 1344(a).

27.     The text of the CWA facially applies only to the "navigable waters" of the United States, defined as "the waters of the United States, including the territorial seas." 33 U.S.C. §§ 1251(a), 1362(7).

28.     The precise definition of "waters of the United States" has been the subject of significant contestation in the decades since the CWA's enactment, most recently in *Sackett v. EPA*. 598 U.S. 651, 663 (2023).

29.     At first, the Corps kept to its traditional role of ensuring the navigability of America's interstate shipping lanes, asserting jurisdiction over only those navigable waters "capab[le] of use by the public for purposes of transportation or commerce." 33 C.F.R. §209.260(e)(1) (1975).

30.     The Corps' interpretation of its own authority under the CWA gradually expanded over the years, culminating in a 2008 rulemaking asserting authority over "[a]ll . . . waters" that "could affect interstate or foreign commerce," including "intrastate lakes, rivers streams

5

(including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds." 40 C.F.R. §230.3(s)(3) (2008).

31. Further, the Corps expanded its authority over "adjacent" wetlands—any wetland areas (also broadly defined) that happen to be "bordering, contiguous, or neighboring" a covered water, including those wetlands that are physically separated from covered waters by natural or man-made barriers. 40 C.F.R. §§ 230.3(b), 230.3(s)(7).

32. The U.S. Supreme Court, over time, has, repeatedly expressed concern over the capacious nature of the EPA and Corps' interpretation of their jurisdiction under Section 404 of the CWA. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 132–33, 135 (1985) (expressing concern over the Corps' expansive interpretation of the CWA, but nevertheless deferring to the agency on where to draw the line); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 168 (2001) (rejecting the migratory bird rule, which extended jurisdiction to any waters or wetlands that "are or would be used as habitat" by migratory birds or endangered species, holding that CWA jurisdiction does not extend "to ponds that are not adjacent to open water").

33. The Corps and the EPA continued to seek opportunities to expand their CWA jurisdiction, largely through the increase in individualized determinations and promulgation of vague regulations, *see Sackett*, 598 U.S. at 667, eventually requiring the Supreme Court to step in again to rein the agencies in.

34. In *Rapanos v. United States*, 547 U.S. 715 (2006), the Court reversed a lower court decision holding that the CWA covered wetlands near ditches and drains that eventually emptied into navigable waters at least 11 miles away, but no opinion was able to win a Court majority. Following *Rapanos*, the EPA and the Corps "issued guidance documents that

6

'recognized larger grey areas and called for more fact-intensive individualized determinations in those grey areas.'" *Sackett*, 598 U.S. at 667 (quoting N. Parrillo, Federal Agency Guidance and the Power To Bind: An Empirical Study of Agencies and Industries, 36 Yale J. on Reg. 165, 231 (2019)), culminating in a situation where the Corps was asserting that "almost all waters and wetlands across the country theoretically could be subject to a case-specific jurisdictional determination." 80 Fed. Reg. 37054, 37056 (June 29, 2015).

35. This controversy over the extent of the agencies' jurisdiction under the CWA came to a head in *Sackett*. The Sacketts had purchased a piece of property in Idaho to build a home, which required backfill of dirt and rocks. The EPA then came in and asserted the property was a jurisdictional wetland and threatened the Sacketts with thousands of dollars of daily fines if they did not restore the site to its previous state. Only, the Sacketts' property did not include any waters of the United States, being located across a 30-foot highway from "an unnamed tributary," which feeds into a non-navigable creek, which feeds into a navigable lake. *Sackett*, 598 U.S. at 662–63.

36. The Supreme Court refused to accept the EPA's (and by extension, the Corps') broad interpretation of EPA jurisdiction, and reaffirmed that the government's authority to regulate land under the CWA is limited to actual waters as traditionally conceived (i.e., oceans, lakes, rivers, and streams) and those wetlands with a "continuous surface connection" to actual waters, such that the wetland is "indistinguishably part of a body of water that itself constitutes 'waters' under the CWA." *Sackett*, 598 U.S. at 676–78.

37. The CWA does not extend—and has never extended—to wetlands that lack a continuous surface connection to waters of the United States.

7

38. As set forth in more detail below, in the Corps' determination challenged herein, the Corps expressly disavows its obligation to follow *Sackett* and additional judicial authority. Accordingly, its determination must be set aside and the Corps enjoined from exercising jurisdiction over Plaintiffs' property, which contains no waters that are subject to the Corps' authority under the CWA.

## FACTUAL BACKGROUND

39. Plaintiff is the owner of property located at 3805 and 3809 State Route 31 in the Town of Clay, County of Onondaga, State of New York more particularly identified as Town of Clay Tax Map SBL No. 020.-01-02.2 (the "Property").

40. Plaintiff's property is generally unimproved except for an abandoned one-story residential building along the southern site boundary.

41. In connection with a plan to develop the Property to construct a car wash facility, Plaintiff identified a series of unauthorized discharges of water onto the Property from adjacent property located at 3827 State Route 31 which is currently improved with a Kohl's department store and shopping plaza (the "Kohl's Parcel"), as well as property located at 3815 State Route 31 which is currently improved with a Panera restaurant (the "Panera Parcel").

42. Plaintiff has received its local municipal approvals to construct a car wash facility on the site, yet is precluded from doing so by virtue of the Corps' determination challenged herein.

43. By virtue of the determination challenged herein, Plaintiff will be precluded from developing its property and putting it to any economically viable use.

44. Pursuant to a wetlands delineation, the Corps identified four wetlands located on the Property, identified in the map provided below:



45. These identified wetlands were, as described at greater length in Plaintiff's submission to the Corps, created as a result of stormwater management measures draining from an adjacent commercial shopping center, and these wetlands are bound by both roadways and railways. Specifically, underground piping installed by the owner of the adjacent shopping center (not owned or controlled by Plaintiff) directed water runoff from the shopping center onto Plaintiff's property.

9

46. In order to reach anything that could remotely be considered relatively permanent flowing water, water from the wet areas located on the Property would have to flow through discrete conveyances including roadway culverts and ditches, railroad culverts and ditches, and highway culverts and ditches for between 2.38 and 2.7 miles. Plaintiff's property thus lacks any connection to waters that are subject to the Corps' jurisdiction under the CWA.

47. On or about January 27, 2025, the Corps issued an Approved Jurisdictional Determination for the Property which determined that three of the four identified wetlands (wetlands 1, 3, and 4) were subject to the jurisdiction of the Corps under Section 404 of the Clean Water Act. A copy of this AJD is annexed hereto as **Exhibit A**.

### Plaintiff's Administrative Appeal

48. On or about March 21, 2025, Plaintiff submitted a Request for Appeal to the Corps, a copy of which is annexed hereto as **Exhibit B**.

49. On or about April 1, 2025, the Corps accepted Plaintiff's Request for Appeal. A copy of that correspondence is annexed hereto as **Exhibit C**.

50. On or about April 17, 2025, the Corps' Buffalo District provided both LRD and Plaintiff with a copy of the District's administrative record, a copy of which is annexed hereto as **Exhibit D**.

51. On or about May 16, 2025, counsel for Plaintiff submitted a letter in support of Plaintiff's appeal, a copy of which is annexed hereto as **Exhibit E**.

52. On or about May 19, 2025, in accordance with 33 CFR §331.7, an informal virtual appeal meeting was held. A Memorandum for Record ("MFR") from that meeting is annexed hereto as **Exhibit F**.

53. On or about May 20, 2025, LRD provided additional information missing from the administrative record via email. A copy of that documentation is annexed hereto as **Exhibit G**.

54. On or about January 15, 2026, the Corps issued its Administrative Appeal Decision in this matter rejecting each of Plaintiff's arguments. A copy of this decision is annexed hereto as **Exhibit H**.

55. Despite the clear facts establishing that Plaintiff's property has no "continuous surface connection" to actual waters of the United States, such that the wetland is "indistinguishably part of a body of water that itself constitutes 'waters' under the CWA" *Sackett*, 598 U.S. at 676–78, the Corps found that it had jurisdiction over Plaintiff's property and that it was not bound to follow, interpret or apply the Supreme Court's controlling decision in *Sackett*. The Corps determined that "[i]t is not within a District Engineer's responsibility or scope of expertise to directly interpret Supreme Court decisions. District Engineers, and by extension, regulatory staff, apply regulation, guidance, and policy that is generated by the agencies in response to such decision or actions by Congress and the courts." Exhibit H, at 4.

56. In finding that Property was subject to its jurisdiction under the CWA, the Corps further expressly refused to follow the Supreme Court's decision in *Sackett* by refusing to consider either *Sackett* or the CWA itself, stating that: "[T]he Appellant's interpretations of the CWA and Sackett or other judicial actions *are not considered in this analysis*." Id. (emphasis supplied).

57. In short, the Corps simply thumbed its nose at the Supreme Court and found that it had jurisdiction over Plaintiff's property, despite the fact that there is no continuous connection

11

to waters of the United States such that they are "indistinguishably part of a body of water that itself constitutes 'waters' under the CWA" as required by *Sackett*.

58. The Corps further irrationally employed its 2023 Rule, which has been enjoined in numerous states, yet the Corps continues to employ that rule in New York. This Court should likewise enjoin use of the Corps' 2023 Rule.

## AS AND FOR A FIRST CAUSE OF ACTION

**(The Corps' Approved Jurisdictional Determination is Arbitrary and Capricious, an Abuse of Discretion, or Otherwise Not in Accordance With Law)**

59. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

60. The APA requires that this Court hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

61. The CWA prohibits the discharge of pollutants into the "navigable waters" or "waters of the United States" and jointly charges the Corps and EPA with the statute's enforcement.

62. The CWA's use of the term "waters" has been held to "encompass[] only those relatively permanent, standing or continuously flowing bodies of water forming geographic[al] features that are described in ordinary parlance as streams, oceans, rivers, and lakes." *Sackett*, 598 U.S. at 671 (quoting *Rapanos*, 547 U.S. at 739) (internal quotations omitted).

63. While Congress has amended the CWA to extend to "wetlands adjacent" to waters of the United States, wetlands are not, themselves, waters of the United States, and this expansion of jurisdiction was strictly limited to "adjacent" wetlands. See 33 U.S.C. § 1344(g)(1).

64. In *Sackett*, the Supreme Court made it clear that agencies may only regulate (1) "those relatively permanent, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes,'" *Sackett*, 598 U.S. at 671 (quoting *Rapanos*, 547 U.S. at 739 (plurality opinion)); and (2) "wetlands" (i) with a "continuous surface connection" to such waters (ii) that are "'as a practical matter indistinguishable from waters of the United States,' such that it is 'difficult to determine where the "water" ends and the "wetland" begins,'" id. at 678 (quoting *Rapanos*, 547 U.S. at 742 (plurality opinion)). If a wetland does not satisfy these conditions, it is, as a matter of law, not among the regulable "waters of the United States."

65. Supreme Court decisions applying a rule of federal law must be given full retroactive effect, "regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule." *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993).

66. However, in issuing their administrative appeal decision, Defendants asserted that "[i]t is not within a District Engineer's responsibility or scope of expertise to directly interpret Supreme Court decisions" instead relying on "regulation, guidance, and policy that is generated by the agencies in response to such decision or actions by Congress and the courts." (Ex. H at 3).

67. Similarly, responding to Plaintiff's assertion that the appeal should consider the Corps' March 12, 2025 memorandum entitled "Memorandum to the Field Between the U.S. Department of the Army, U.S. Army Corps of Engineers and the U.S. Environmental Protection Agency Concerning the Proper Implementation of "Continuous Surface Connection" Under the Definition of "Waters of the United States" Under the Clean Water Act" (the "CSC Memo"), Defendants argues that they could not take that binding CSC Memo into account, as it was issued after the AJD was issued.

68. Defendants again, in response to Plaintiff's assertion with respect to the CSC Memo, aver that "it is not within the District's scope to interpret court decisions, and the sufficiency of regulation, guidance, and policy available to a district at the time it issued the AJD is beyond the scope of the appeal process. Therefore, the Appellant's interpretations of the CWA and Sackett or other judicial actions are not considered in this analysis." (Ex. H at 4).

69. In asserting authority over wetlands without a continuous surface connection to waters of the United States, as that term is set forth in the Supreme Court's recent *Sackett* decision, and memorialized in the Corps' own CSC Memo, the Corps' decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

70. By these acts or omissions, the Corps violated both the APA (5 U.S.C. §706(2)(A)) and the CWA. The AJD at issue is, therefore, invalid and must be set aside.

## AS AND FOR A SECOND CAUSE OF ACTION

### (The Corps' AJD was Issued In Excess of Statutory Jurisdiction, Authority, or Limitations, or Short of Statutory Right)

71. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

72. The APA required that this Court hold unlawful and set aside any agency action that exceeds the agency's statutory authority. 5 U.S.C. §706(2)(C).

73. As set forth at greater length above (*see* First Cause of Action *supra*), the Corps' assertion of authority over wetlands on the Property without a "continuous surface connection" to any adjacent wetlands directly contravenes the Supreme Court's *Sackett* decision, the Corps' own CSC Memo, and, therefore, the CWA's limited grant of jurisdiction ot the Corps. 33 U.S.C. §1362(7).

74. When, as here, an agency claims broad authority to exercise powers of "vast economic and political significance," it must rely on "clear congressional authorization for the power it claims." *West Virginia v. EPA*, 597 U.S. 697, 716, 723 (2022) (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)).

75. In *Sackett*, the Supreme Court noted that, since its previous decision in *Rapanos*, "almost all waters and wetlands across the country theoretically could be subject to a case-specific jurisdictional determination" pursuant to then applicable agency guidance. *Sackett*, 598 U.S. at 667.

76. The Corps' assertion of authority here therefore concerns an issue of vast economic and political significance.

77. As a result, the Corps' assertion of authority requires a clear statement from Congress because it would "significantly alter the balance between federal and state power and the power of the Government over private property." *Sackett*, 598 U.S. at 679. By continuing to enforce the CWA where it has no jurisdiction over private property, the Corps is undermining the "core of traditional state authority" to regulate land and water use. *Id.* at 680.

78. The Corps cannot identify such a clear statement from Congress, and indeed in the 2025 CSC Memo, the Corps, together with the EPA, sets forth a standard for "continuous surface connection" in light of *Sackett* contrary to the regulations and guidance upon which the Corps relied in reaching its AJD.

79. In, nevertheless, asserting that the Corps has jurisdiction over the wetlands at issue here on the Property, merely because the CSC memo had not been published at the time the initial AJD was made, the Corps is clearly acting in excess of its authority. *See La. Pub. Serv.*

15

*Comm'n v. FCC,* 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act . . . unless and until Congress confers power upon it.").

80. By these acts or omissions, the Corps violated the APA (5 U.S.C. §706(2)(C)) and the CWA. As a result, the AJD at issue here is invalid and mist be set aside.

### AS AND FOR A THIRD CAUSE OF ACTION

**(The Conditions Placed Upon Plaintiff's Use of the Property By the AJD are Unconstitutional)**

81. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

82. The Fifth Amendment to the United States Constitution prohibits the government from taking private property for public use without just compensation. U.S. Const. amend. V.

83. Courts have long recognized takings may take forms other than direct appropriations of property. *See Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014 (1992) ("[W]hile property may be regulated to a certain extent, if the regulation goes too far it will be recognized as a taking.") (quoting *Pa. Coal Co. v. Mahon,* 260 U.S. 393, 415 (1922)). These types of takings are referred to as "regulatory takings." *Id.* at 1015.

84. The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Sheetz v. Cnty. of El Dorado,* 601 U.S. 267, 275 (2024) (quoting Perry v. Sindermann, 408 U.S. 593, 597 (1972)).

85. In the Fifth Amendment land use context, this "unconstitutional conditions" doctrine prohibits the government from "requir[ing] a person to give up a constitutional right— here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Dolan v. City of Tigard,* 512 U.S. 374, 385 (1994).

86. There must be an "essential nexus" between some "legitimate state interest" and the specific conditions exacted in exchange for the approval of a permit. *Id.* at 386.

87. Here, the lack of a jurisdictional wetland on the Property means that there is no substantial nexus between the conditions placed on Plaintiff's use of the Property by the AJD and the Corps' legitimate interest in enforcing the CWA.

88. Forcing a property owner "to choose between the building permit and [its] right under the Fifth Amendment to just compensation for the public easements" when the government has not conferred any "special benefits" in exchange constitutes an unconstitutional condition in violation of the Fifth Amendment. *Dolan*, 512 U.S. at 385.

89. In seeking to assert jurisdiction over Plaintiff's ordinary, lawful use of its private property, and, as a result, seeking to compel Plaintiff to attempt to obtain a permit for the use of its Property, the Corps seeks to impose upon Plaintiff an unconstitutional burden of its right to use its Property that it could not impose on Plaintiff directly.

90. The Corps has no legitimate interest in regulating land over which it has no jurisdiction, and no legitimate interest in requiring Plaintiff to give up what is essentially a private easement over much of its property to protect jurisdictional wetlands that do not exist.

91. Plaintiff has received local municipal approvals to construct a car wash on its property.

92. Defendants' AJD challenged herein deprives Plaintiff of its ability to develop the property for its proposed car wash use, as well as all other economic use of its property.

93. Because the AJD contravenes Plaintiff's Fifth Amendment property rights, it should be set aside and Defendants enjoined from asserting jurisdiction over Plaintiff's property under the challenged AJD.

WHEREFORE, Plaintiff Delta-Sonic Carwash Systems, Inc. respectfully requests that this Court enter judgment in its favor:

1. Declaring the Corps' Approved Jurisdictional Determination ("AJD") over Plaintiff's Property to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2. Setting aside the Corps' assertion of jurisdiction over Plaintiff's Property as in excess of the Corps' statutory authority and, as such, unlawful pursuant to APA §706 and the CWA;

3. Permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing against Plaintiff the assertion of jurisdiction under the challenged AJD;

4. Awarding Plaintiff reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 1988, or any other appropriate authority; and

5. Ordering such other and further relief as this Court shall deem just and proper.

Dated: March 3, 2026                    WHITEMAN OSTERMAN & HANNA LLP

                                        _____
                                        John J. Henry, Esq.
                                        Anthony R. Bjelke, Esq.
                                        *Attorneys for Plaintiff*
                                        *Delta-Sonic Carwash Systems, Inc.*
                                        One Commerce Plaza
                                        Albany, New York 12260
                                        518-487-7600
                                        jhenry@woh.com
                                        abjelke@woh.com